**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 02:28 PM July 17, 2012**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| IRENE M. STARR, | ) | CASE NO. 09-64079 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| | ) | |

On June 25, 2012, chapter 7 trustee Michael V. Demczyk ("Trustee") filed a motion under 11 U.S.C. § 363(b) to sell unliquidated fraudulent transfer and preference claims against non-debtor third-parties to a creditor, Advantage Bank. Chris L. Starr ("Mr. Starr"), one of the potential defendants and the former husband of Debtor, objected to the motion. The court held an expedited hearing on July 10, 2012. Trustee appeared on his own behalf. James R. Russell, Jr., counsel for Mr. Starr, and John L. Chaney, counsel for Advantage Bank, also appeared at the hearing.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

Debtor filed an individual chapter 7 case on October 1, 2009.   Trustee's notes following the 341 meeting label this an asset case and he filed a notice of assets on October 2, 2009.   All potential assets that were previously identified have either been abandoned or proved to be of no value.   Trustee is pursuing no assets.

The clerk's office provided a claims bar date notice on October 7, 2009.   Claims were due January 4, 2010.   A total of five claims were filed:

| Claim # | Claimant | Amount |
|---------|----------|--------|
| 1 | RBS Citizens | $   1,012.22 |
| 2 | Chris L. Starr | $ 209,359.04 |
| 3 | Advantage Bank | $ 917,805.26 |
| 4 | PRA Receivables Mgmt. | $   1,032.00 |
| 5 | Toyota Motor Credit Corp. | $   1,009.53 |

In essence, Trustee seeks to sell the entire estate to the largest creditor of the estate.   Advantage Bank and Chris Starr's claims represent nearly the entirety of the total claims in the case.   In return for the transfer of the claims, Trustee will receive a ten percent interest in any recovery. Advantage Bank will retain the remaining ninety percent interest and will take over all control. Control of the estate is being sold for a pittance so that one creditor can pursue another.

## DISCUSSION

In support of his objection to the proposed sale, Mr. Starr cites In re Metro. Elec. Mfg. Co., 295 B.R. 7 (E.D.N.Y. 2003).   Trustee failed to cite any counter-authority or attempt to distinguish the case.   The court finds Metro. Elec. persuasive.

The chapter 11 debtor in Metro. Elec. was equally owned by two different warring groups of family members ("Joseph Group" and "James Group").   Following the bankruptcy filing, James Group formed a new company and successfully managed to buy the assets of the debtor, save certain excluded assets, which included avoidance actions.   The trustee proposed to sell the avoidance actions to the Joseph Group.   Prospective defendants in the avoidance actions included members or relatives of the James Group, as well as a company owned by the James Group.

Under the terms of the proposed sale, the trustee would retain no oversight or authority over the actions.[1]   In exchange for his release of the claims, the Joseph Group proposed to pay the estate $25,000.   The Joseph Group later offered to allow the trustee to maintain oversight and also offered to pay the estate twenty percent of any recoveries on the claims.   The bankruptcy court rejected the sale.

---

1 It appears the trustee didn't want any involvement because he concluded the claims were of no value to the estate or lacked merit, plus the estate had previously recovered assets sufficient to distribute nearly one hundred percent to creditors with allowed claims.

The court started by reviewing the role and obligations of a trustee to the estate and to creditors. The court noted its ability to oversee a trustee in fulfillment of his duties. It also pointed out that the bankruptcy code specifically delegates the power to pursue avoidance actions to a trustee. This combination of factors led the court to recognize that transfers should be tempered:

> Bankruptcy courts are properly hesitant to authorize the sale or assignment of a trustee's avoidance powers or causes of action to a single creditor. Assignments of the Trustee's unique statutory powers, if not narrowly circumscribed, may too easily result in the delegation and dilution of the trustee's duty 'to marshal the debtor's property for the recovery of all property available under state law.'

In re Metro. Elec., 295 B.R. 7, 12 (citing In re Greenberg, 266 B.R. 45, 51 (Bankruptcy E.D.N.Y. 2001)). Relying on a case from the Second Circuit Court of Appeals, the court determined that approval of a proposed transfer of the avoidance claims hinged on a two part test. Metro. Elec., 295 B.R. 7, 13 (citing Commodore Int'l, Ltd. v. Gould (In re Commodore Int'l, Ltd.), 262 F.3d 96, 100 (2nd Cir. 2001)). First, the trustee must consent, and second, the transfer must be "(a) in the best interest of the bankruptcy estate and (b) necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings." Metro. Elec., 295 B.R. at 13.

The court then denied the sale of the avoidance actions. Although the trustee consented to the transfer, the court said the consent was "half-hearted at best" because the trustee wanted no involvement and deemed the claims worthless. The court also found the second prong lacking. First, there was no evidence that the claims were meritorious. Second, the court recognized that Joseph Group had an axe to grind against the potential defendants, creating a potential for a conflict of interest between the Joseph Group and the estate. Third, the court noted that the trustee had the funds to pursue the avoidance actions on his own. Finally, it concluded that the amount the estate was to receive from the sale did not justify extending the litigation between the parties and holding the case open indeterminately. The court declined to approve the transfer of the causes of action.

Using the two part test adopted in Metro. Elec. leads this court to also deny the proposed sale. Although the trustee consents, it is not with commitment. He admitted at the hearing that he felt that his fiduciary obligations required him to accept an offer that could potentially realize assets for the estate, which presently has no assets and no funds to pursue the actions. He stated that he "belives no competent bankruptcy counsel could be engaged to represent the estate's interest on a contingency fee basis." (Motion ¶ 5). There was no evidence he attempted to find counsel to pursue the actions, nor did he provided any information on the outcome of an investigation of the merit of the claims. Trustee's consent appears based solely on the fact that he currently has nothing in the estate and this offer provides him a hope. The court doesn't find Trustee's consent to be an informed decision based on full consideration of all the facts of the case.

Further, there is no proof that the sale is in the best interest of the estate or necessary and beneficial. The sale represents the transfer of the entire value of the estate to a third party, the largest creditor of the estate, who will be proceeding, in part, against the second largest creditor of the estate. The total claims between these two creditors represents 99.7% of the claims filed in the case. Advantage Bank's direct stake in the matter reeks of conflict.

While the court recognizes that Advantage Bank is willing to front the costs of the litigation, selling these claims to Advantage Bank is disadvantageous to Mr. Starr from the start. If Trustee pursued the claims and recovered funds, Mr. Starr would be entitled to receive up to almost nineteen percent of any net recovery (after deducting the Trustee's fees and costs). Under this proposal, if money is recovered, Mr. Starr must share a ten percent recovery with the other creditors of the estate. Advantage Bank is basically pocketing his remaining share of the estate. This one-sided benefit can defeat a court's award of derivative standing to a creditor to pursue actions. *See, e.g.,* <u>In re McGuirk</u>, 414 B.R. 878 (Bankr. N.D. Ga. 2009) (citing <u>Craig v. Green Light Capital Qualified, L.P. (In re Prosser)</u>, 2009 WL 2424409 (Bankr. D. V.I. 2009)). It should apply no less on these facts.

Also concerning is the lack of any concrete benefit to the estate. There are only three creditors, totaling approximately $3,000 in claims, outside of Advantage Bank and Mr. Starr. This deal would give Advantage Bank complete control of the estate for a maximum creditor benefit of $3,000, excluding any benefit to Advantage Bank. Consequently, any efforts with this litigation will disproportionately benefit Advantage Bank. This "appearance of unfairness and a lack of neutrality" is a concern recognized by at least one court in sales of this nature. <u>In re Greenberg</u>, 266 B.R. 45, 51 (Bankr. E.D.N.Y. 2001).

Additionally, as in <u>Metro. Elec.</u>, Trustee retains no control over the litigation. Instead, control of the estate is fully ceded to Advantage Bank. There is no indication how long the litigation would last. Debtor's case has been pending for almost three years. Advantage Bank is pursuing Debtor in a nondischargeability action and now wants to bring her ex-husband to the ring, leading the court to question whether Advantage Bank is seeking to grind an axe with Mr. Starr. Using the Trustee's avoidance to do so is not in the best interest of or of benefit to the estate.

The court acknowledges cases where courts have approved similar sales. <u>Greenberg</u>, 266 B.R. 45; <u>Banque Nationale de Paris v. Murad (In re Housecraft Ind. USA, Inc.)</u>, 310 F.3d 64 (2nd Cir. 2002). The cases are easily distinguishable and therefore not helpful to Trustee. <u>Greenberg</u> is the most factually similar case. There, the court approved a transfer to the creditor holding ninety-nine percent (99%) of the claims. The <u>Greenberg</u> trustee proposed to settle fraudulent conveyance claims with the debtor's wife for $150,000. The largest creditor offered the trustee $175,000 for transfer of the trustee's powers to pursue the claim. Recognizing the additional value the sale would bring to the estate, the court approved the sale with the understanding that "the trustee's authority to pursue these claims may be properly assigned to Chubb provided that such authority is limited to the pursuit of claims on behalf of the estate and that any subsequent recovery is equitably distributed to Greenberg's creditors under the trustee's supervision." <u>Greenberg</u>, 266 B.R. at 51. Here, there is no tangible value provided to the estate.

In <u>Housecraft</u>, the appellate court approved a transfer of claims to a secured creditor. Like this case, there were no estate assets to fund the litigation. Unlike this case, however, the trustee in <u>Housecraft</u> would be jointly prosecuting the action with the secured creditor and the court specifically found that the claims were colorable. Because they are not on point, neither <u>Greenberg</u> and <u>Housecraft</u> is persuasive.

In light of the above, the court finds that the motion to sell is not well-taken. The motion will be denied by a separate order to be entered immediately.

#　　　#　　　#

**<u>Service List:</u>**

Michael V Demczyk
PO Box 867
12370 Cleveland Ave NW
Uniontown, OH 44685

John L Chaney
Ray P Drexel
Gamble Hartshorn LLC
One E Livingston Ave
Columbus, OH   43215-5700

James R Russell Jr
Peter G Tsarnas
Goldman Rosen
11 S Forge St
Akron OH   44304